UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------
WELLS FARGO BANK NORTHWEST, N.A.,
                              Plaintiff,

                    -v-                                16-CV-8065 (JPO)

SYNERGY AEROSPACE CORP. and                            OPINION AND ORDER
OCEANAIR LINHAS AEREAS, S.A.,
                              Defendants.
---------------------------------------------------------------

J. PAUL OETKEN, District Judge:

    Plaintiff Wells Fargo Bank Northwest, N.A. ("Wells Fargo") filed this action on October 14, 2016, against Synergy Aerospace Corp. ("Synergy") and Oceanair Linhas Aereas, S.A. ("Oceanair"). (Dkt. No. 1 ("Compl.").) Invoking this Court's diversity jurisdiction under 28 U.S.C. § 1332(a)(2), Wells Fargo asserts a breach-of-contract claim against each defendant. (*Id.*) Synergy and Oceanair now move to dismiss for lack of subject matter jurisdiction pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(h)(3). (Dkt. No. 10.) For the reasons that follow, the motion is denied.

**I.    Background**

    The following facts are taken from the Complaint, exhibits attached to the Complaint, and exhibits attached to Defendants' motion to dismiss and responsive briefing.[1]

    This case arises out of an aircraft lease. In 2014, Avolon Aerospace AOE 90 Limited ("Avolon"), a limited company incorporated under the laws of the Cayman Islands, began negotiations with Oceanair, a corporation organized under the laws of Brazil, for Oceanair to lease an Airbus A330-243 aircraft ("Aircraft") from Avolon. (Compl. ¶¶ 3, 8, 11.)

---

[1] When deciding a motion to dismiss for lack of subject matter jurisdiction, the Court may consider evidence outside the pleadings. *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000) (citing *Kamen v. Am. Tel. & Tel. Co.*, 791 F.2d 1006, 1011 (2d Cir. 1986)).

1

Because federal law restricts the ability of foreign citizens to register aircrafts with the Federal Aviation Administration ("FAA"), *see* 49 U.S.C. § 44102; 14 C.F.R. § 47.7, Avolon and Oceanair each created a trust with a U.S. entity designated as owner trustee. In June 2014, Oceanair created a trust and designated the Bank of Utah as owner trustee. (Compl. ¶ 13.) Around the same time, Avolon executed a trust agreement with Wells Fargo ("June 2014 Trust Agreement") (Compl. ¶ 12; Dkt No. 16-2.) The June 2014 Trust Agreement created the MSN 1508 Trust, designated Wells Fargo as owner trustee, and transferred title to the Aircraft to Wells Fargo. (Dkt. No. 16-2 §§ 2.01-2.03.) In a letter dated June 9, 2014, the FAA indicated that the June 2014 Trust Agreement would "support the registration of the [Aircraft] in the name of the Owner Trustee" Wells Fargo. (Dkt. No. 16-4.)

After the trusts were created, Wells Fargo leased the Aircraft to the Bank of Utah. (Compl. ¶ 14; Dkt. No. 1-3.) Under the Aircraft Lease Agreement ("Lease"), the Bank of Utah agrees to make monthly rental payments to Wells Fargo that, if late, accrue interest assessed at a pre-determined rate. (Compl. ¶¶ 15–16; Dkt. No. 1-3 §§ 5.1, 5.5.) In the event of a default, the Lease provides Wells Fargo the right "to proceed by appropriate court action to enforce performance" of the Lease or to terminate the Lease and recover back-rent, lost profits, the Aircraft itself, and associated costs. (Compl. ¶ 18; Dkt. No. 1-3 §§ 20.1, 20.3.)

As a condition of executing the Lease, Wells Fargo also required Synergy, a holding company and related entity of Oceanair (Compl. ¶ 9), and Oceanair to sign guaranty agreements. In the Synergy Guaranty (Dkt. No. 1-1) and Oceanair Guaranty (Dkt. No. 1-2) (collectively, "Guaranties"), Synergy and Oceanair each independently "irrevocably, absolutely and unconditionally guarantees" performance by, and "prompt" and "full" payment from, the Bank of Utah. (Compl. ¶¶ 21–22; Dkt. No. 1-1 § 1; Dkt. No. 1-2 § 2.) Both agreements also provide

that Synergy and Oceanair are liable for any costs incurred by Wells Fargo in connection with enforcing the Guaranties. (Compl. ¶¶ 21–22; Dkt. No. 1-1 § 13; Dkt. No. 1-2 § 2.)

To effectuate a refinancing of the Aircraft, Wells Fargo entered into a sale-leaseback arrangement with Corrib Aviation Limited ("Corrib") in October 2014. (Dkt No. 16 ¶ 9 ("Rosevear Decl.").) Under the sale-leaseback, Wells Fargo agreed to sell the Aircraft to, and subsequently lease the Aircraft back from, Corrib. (*Id.*) The term of Wells Fargo's lease runs concurrent with the term of a loan made by Wells Fargo to Corrib, and title to the Aircraft will revert to Wells Fargo at the end of the loan and lease term. (*Id.*) To facilitate the sale-leaseback, Wells Fargo and Avolon entered into an Amended and Restated Trust Agreement ("Trust Agreement") on October 15, 2014. (*Id.*; Dkt No. 16-3.) Wells Fargo remained the registered owner of the Aircraft after the sale-leaseback. (Dkt. Nos. 16-7, 16-8.)

Over time, the Bank of Utah fell behind on its rent payments. (Compl. ¶ 23.) Wells Fargo sent Synergy a demand for payment on August 4, 2016 and, after receiving no payment, a notice of default of August 11, 2016. (Compl. ¶ 24.) Wells Fargo alleges that as of October 11, 2016, Synergy and Oceanair were liable for $4,936,000 plus interest in damages. (Compl. ¶¶ 32, 38.) Alleging federal diversity jurisdiction, Wells Fargo filed this action for breach of contract on October 14, 2016. (Compl. ¶ 4.)

Defendants filed the instant motion to dismiss pursuant to Rules 12(b)(1) and 12(h)(3) of the Federal Rules of Civil Procedure.[2] (Dkt. No. 10.) Defendants argue that this Court lacks

---

[2] Rule 12(h)(3) requires that "[i]f the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3). "Motions brought pursuant to Rule 12(h)(3) are subject to the same standards as motions to dismiss for want of subject matter jurisdiction brought pursuant to Rule 12(b)(1) . . . ." *Correspondent Servs. Corp. v. JVW Inv., Ltd.*, No. 99 Civ. 8934, 2004 WL 2181087, at *5 (S.D.N.Y. Sept. 29, 2004), *judgment entered sub nom. Correspondent Servs. Corp. v. J.V.W. Inv. Ltd.*, 232 F.R.D. 173 (S.D.N.Y. 2005), *and aff'd sub nom. Correspondent Servs. Corp. v. First*

subject matter jurisdiction because both Defendants and Plaintiff are properly classified as foreign entities—which, if true, would deprive this Court of diversity jurisdiction under 28 U.S.C. § 1332(a)(2). (Dkt. No. 12 at 1.)

## II. Legal Standards

"Federal courts are courts of limited jurisdiction." *Gunn v. Minton*, 133 S. Ct. 1059, 1064 (2013) (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)) (internal quotation marks omitted). "A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000).

"When resolving a Rule 12(b)(1) motion, a district court may refer to evidence outside the pleadings, and the plaintiff bears the burden to prove subject-matter jurisdiction by a preponderance of the evidence." *Morrow v. Ann Inc.*, No. 16 Civ. 3340, 2017 WL 363001, at *2 (S.D.N.Y. Jan. 24, 2017) (citing *Makarova*, 201 F.3d at 113); *see also Kurzon v. Democratic Nat'l Comm.*, No. 16 Civ. 4114, 2017 WL 2414834, at *1 (S.D.N.Y. June 2, 2017). When considering a motion to dismiss for lack of subject matter jurisdiction, a federal court "must accept as true all material factual allegations in the complaint . . . [b]ut . . . jurisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it." *Shipping Fin. Servs. Corp. v. Drakos*, 140 F.3d 129, 131 (2d Cir. 1998) (citing *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974); *Norton v. Larney*, 266 U.S. 511, 515 (1925)).

Wells Fargo seeks to invoke this Court's subject matter jurisdiction under 28 U.S.C. § 1332(a)(2). (Compl. ¶ 4.) Under § 1332(a)(2), federal district courts have original jurisdiction

---

*Equities Corp. of Florida*, 442 F.3d 767 (2d Cir. 2006). Accordingly, Defendants' motion under Rule 12(h)(3) will be treated as a motion pursuant to Rule 12(b)(1).

4

over civil actions in which the amount in controversy exceeds $75,000 and the dispute is between "citizens of a State and citizens or subjects of a foreign state." 28 U.S.C. § 1332(a)(2). Consequently, "diversity is lacking within the meaning of [§ 1332(a)(2)] where the only parties are foreign entities." *Universal Licensing Corp. v. Paola del Lungo S.p.A.*, 293 F.3d 579, 581 (2d Cir. 2002).

In a suit involving a trustee suing or being sued in its own name, the citizenship of the trustee may be used for purposes of establishing diversity jurisdiction. *Navarro Savings Ass'n v. Lee*, 446 U.S. 458, 462–64 (1980). "[T]rustees of an express trust are entitled to bring diversity actions in their own names and upon the basis of their own citizenship. . . . [J]urisdiction properly founded upon the diverse citizenship of individual trustees 'is not defeated by the fact that the parties whom they represent may be disqualified.'" *Id.* at 462–63 (quoting *Coal Co. v. Blatchford*, 78 U.S. 172, 174 (1870)); *see also Catskill Dev., L.L.C. v. Park Place Entm't Corp.*, 547 F.3d 115, 124 (2d Cir. 2008) (Sotomayor, J.) ("For purposes of diversity jurisdiction, the citizenship of the fiduciary—not the beneficiary—generally controls.").

However, "[i]t is firmly established that 'citizens' for purposes of a federal court's diversity jurisdiction 'must be real and substantial parties to the controversy.'" *Oscar Gruss & Son, Inc. v. Hollander*, 337 F.3d 186, 193 (2d Cir. 2003) (quoting *Navarro*, 446 U.S. at 460). A court may not rest its diversity jurisdiction on the citizenship of a "'naked trustee' who act[s] as [a] 'mere conduit[]' for a remedy flowing to others." *Navarro*, 446 U.S. at 465 (quoting *McNutt v. Bland*, 43 U.S. 9, 13 (1844)).

"If a trustee is truly a naked trustee, the trust's beneficiaries are the real parties to the controversy, and their citizenship will control for diversity purposes." *Cortlandt St. Recovery Corp. v. Aliberti*, No. 12 Civ. 8686, 2014 WL 6907548, at *2 (S.D.N.Y. Dec. 9, 2014) (quoting

*Wells Fargo Bank, N.A. v. Ullah*, No. 13 Civ. 0485, 2014 WL 470883, at *3 (S.D.N.Y. Feb. 6, 2014)). But "[w]here a trustee brings the action in her own name, *and* where she is a bona fide trustee, she is entitled to rely on her own citizenship for diversity purposes." *Nomura Asset Acceptance Corp. Alternative Loan Trust, Series 2007-1 ex rel. HSBC Bank USA v. Nomura Credit & Capital, Inc.*, 27 F. Supp. 3d 487, 490 (S.D.N.Y. 2014).[3]

A trustee is a real party to the controversy where it "possesses certain customary powers to hold, manage, and dispose of assets for the benefit of others." *Navarro*, 446 U.S. at 464; *see also Dodge v. Tulleys*, 144 U.S. 451, 455 (1892) (holding that the "trustee, to whom the legal title was conveyed in trust, . . . was therefore the proper party in whose name to bring suit"); *Nomura*, 27 F. Supp. 3d at 492 ("Where the action is brought in the name of the trustee, courts must inquire into whether the trustee is more than just a 'sham' who has no real power to control the litigation or the property at issue." (citing *Navarro,* 446 U.S. at 465)). "Whether the trustee possesses such powers is a question that is resolved based on the underlying trust document." *U.S. Bank Nat. Ass'n v. Nesbitt Bellevue Prop. LLC*, 859 F. Supp. 2d 602, 606 (S.D.N.Y. 2012).

---

[3] Note that Rule 17(a) of the Federal Rules of Civil Procedure, which requires that "an action must be prosecuted in the name of the real party in interest," allows a "trustee of an express trust" to "sue in [its] own name[] without joining the person for whose benefit the action is brought." Fed. R. Civ. P. 17(a). Defendants concede that Wells Fargo is a proper plaintiff under Rule 17(a). (Dkt. No. 17 at 3 n.3.) However, the fact that Wells Fargo has complied with Rule 17(a)'s procedural requirement does not automatically establish that Wells Fargo is a real party to the controversy for purposes of diversity jurisdiction. "The Supreme Court has noted that although there exists a 'rough symmetry between the real party in interest standard of Rule 17(a) and the rule that diversity jurisdiction depends upon the citizenship of real parties to the controversy . . . the two rules serve different purposes and need not produce identical outcomes in all cases.'" *Oscar Gruss*, 337 F.3d at 194 (quoting *Navarro*, 446 U.S. at 462 n.9).

**III.    Discussion**

Because both Oceanair and Synergy are citizens of foreign states,[4] diversity jurisdiction fails under § 1332(a)(2) if the plaintiff is not a citizen of a U.S. state.  Wells Fargo is the only plaintiff entity named in the caption of the suit, and it is a citizen of the state of Utah.[5]  However, "a federal court must disregard nominal or formal parties and rest jurisdiction only upon the citizenship of real parties to the controversy." *Navarro*, 446 U.S. at 461.  Defendants argue that because Avolon is the sole beneficiary of the MSN 1508 Trust, it is Avolon's Cayman Islands citizenship that determines plaintiff's citizenship—and destroys diversity jurisdiction. (Dkt. No. 12 at 4–5.)  Plaintiff responds that Avolon's citizenship is irrelevant to determining diversity jurisdiction because Wells Fargo is a real party to the controversy. (Dkt. No. 14 at 4–5, 10–12.)

Wells Fargo has the better of the argument.  Because Wells Fargo "possesses certain customary powers to hold, manage, and dispose of assets for the benefit of others," *Navarro*, 446 U.S. at 464, Wells Fargo is a real and substantial party to the controversy.

First, Wells Fargo has the legal power to hold and dispose of the Aircraft.  The Trust Agreement conveyed title to the Aircraft to Wells Fargo (Dkt. No. 16-3 § 2.01), and divested

---

[4]    Oceanair is a corporation organized and existing under the laws of Brazil, with its principal place of business in São Paulo, Brazil. (Compl. ¶ 3.)  Synergy is a corporation organized and existing under the laws of Panama, with its principal place of business in São Paulo, Brazil. (Compl. ¶ 2.)  As such, both defendants are citizens of a foreign state for the purposes of § 1332. *See JPMorgan Chase Bank v. Traffic Stream (BVI) Infrastructure Ltd.*, 536 U.S. 88, 91 (2002) ("A 'corporation of a foreign State is, for purposes of jurisdiction in the courts of the United States, to be deemed, constructively, a citizen or subject of such State.'" (quoting *Nat. S.S. Co. v. Tugman*, 106 U.S. 118, 121 (1882))).

[5]    National banking associations are "deemed citizens of the States in which they are respectively located," 28 U.S.C. § 1348, and a national bank is "located" "in the State designated in its articles of association as its main office," *Wachovia Bank v. Schmidt*, 546 U.S. 303, 318 (2006).  Because Wells Fargo Bank Northwest, N.A. is a national banking association with its principal place of business is in Salt Lake City, Utah (Compl. ¶ 1; Dkt. No. 16-1), it is a citizen of Utah for purposes of determining diversity jurisdiction.

7

Avolon of any legal title in the Aircraft itself (*id.* § 8.01). Pursuant to the terms of the Trust Agreement, Wells Fargo has the power to enter into an "assignment, sale, transfer or other conveyance" of the Aircraft that will legally bind Avolon. (*Id.* § 8.02.) Wells Fargo exercised this power when it executed the Lease with the Bank of Utah (Dkt. No. 1-3), and again when it entered into the sale-leaseback arrangement with Corrib (Rosevear Decl. ¶ 9).[6]

Second, Wells Fargo possesses the power to manage the Aircraft. The Lease grants Wells Fargo the right to receive all payments and, at its option, to pursue the remedies set forth in the Lease in the event of a default. (Dkt. No. 1-3 §§ 5.1, 20.1.) The Trust Agreement indicates that Avolon "will have no rights or powers to direct, influence or control [Wells Fargo] in the performance of [Wells Fargo's] duties under this Agreement, including matters involving the ownership and operation of the Aircraft." (Dkt. No. 16-3 § 9.01(a).) And although Avolon can remove Wells Fargo, it may do so "for cause only." (*Id.* § 3.02.) In fact, FAA regulations require that foreign trust beneficiaries not "have more than 25 percent of the aggregate power to influence or limit the exercise of the trustee's authority . . . [or] to direct or remove a trustee," 14 C.F.R. § 47.7(c), and the FAA recognizes Wells Fargo as the registered owner of the Aircraft (*see* Dkt. Nos. 16-4, 16-7, 16-8).

---

[6] Defendants indicate that they are "troubled" by the sale-leaseback because it transferred legal title to the Aircraft to Corrib. (Dkt. No. 17 at 1 n.1.) But Defendants' concern is misplaced. Wells Fargo remains a lessee of the Aircraft and will reacquire legal title to the Aircraft at the end of the lease term. (Rosevear Decl. ¶ 9.) As such, Wells Fargo retains a property interest in title to the Aircraft. *Cf. Karras v. Teledyne Indus., Inc.*, 191 F. Supp. 2d 1162, 1172–73 (S.D. Cal. 2002) (finding irrelevant the defendant's argument that "the Trustee does not own the Trust assets because the grantors, and not the Trustee, pay taxes on the trust assets" because the defendant "has not cited any case that holds that a trustee must 'own' the trust assets to satisfy the real party in interest requirement" of Federal Rule of Civil Procedure 17). Indeed, the sale-leaseback provides persuasive evidence that Wells Fargo possesses the power to "dispose of" the trust asset. *Navarro*, 446 U.S. at 464.

Defendants respond by arguing that Wells Fargo operates as a "'passive' trustee" who has "ced[ed] all operational control of [Avolon's] airplane to [Avolon]." (Dkt. No. 12 at 2 (citing *Garcia v. Wells Fargo Bank Nw. NA Tr.*, No. 10 Civ. 20383, 2011 WL 3439530, at *1 (S.D. Fla. Aug. 5, 2011)).) But the fact that Wells Fargo does not actively direct the Aircraft's operations does not indicate that Wells Fargo lacks the "customary power[] to . . . manage" the asset. *Navarro*, 446 U.S. at 464. This Court heeds the advice that "'it would be a mistake to complicate the ascertainment of jurisdiction by making it turn on the precise division of responsibilities between' trustees and other parties." *Wells Fargo Bank Nw., N.A. v. TACA Int'l Airlines, S.A.*, 314 F. Supp. 2d 195, 201 (S.D.N.Y. 2003) (quoting *May Dep't Stores Co. v. Fed. Ins. Co.*, 305 F.3d 597, 599 (7th Cir. 2002) (Posner, J.)); *see also WBCMT 2007-C33 NY Living, LLC v. 1145 Clay Ave. Owner, LLC*, 964 F. Supp. 2d 265, 270 (S.D.N.Y. 2013) ("[C]omplex facts give way to a simple legal answer: WBMCT has all right, title, and interest in the loan documents. That makes it a real and substantial party to the controversy . . . ."). Avolon's ability to direct some aspects of Wells Fargo's management of the Aircraft does not transform Wells Fargo into a mere nominal party. *See Cortlandt*, 2014 WL 6907548, at *2–3; *Mfrs. & Traders Tr. Co. v. HSBC Bank USA, N.A.*, 564 F. Supp. 2d 261, 264 (S.D.N.Y. 2008).

Third, Wells Fargo is the only entity with standing to bring this suit. Neither the MSN 1508 Trust itself nor Avolon is a party to the Guaranties. (Dkt. Nos. 1–1, 1–2.) As far as the Guaranties are concerned, Oceanair and Synergy have made no contracts with, and have breached no obligations to, Avolon. Wells Fargo is not only a real party to the breach-of-guaranty controversy; it is the *only* potential plaintiff. *See Oscar Gruss*, 337 F.3d at 195 (holding that the defendant was a real and substantial party to the controversy where it "(1) had negotiated and signed the agreement that was the subject of the action; (2) was most familiar

with the matters in the suit; and (3) had a real and substantial financial interest in the outcome of the litigation"); *Fleet Nat. Bank v. Trans World Airlines, Inc.*, 767 F. Supp. 510, 514 (S.D.N.Y. 1991) (explaining that "one controlling factor" in finding a trustee to be a real party to the controversy is when "the trustee [is] the only party able to seek return of the security at issue"); *Connecticut Nat. Bank v. Trans World Airlines, Inc.*, 762 F. Supp. 76, 79 (S.D.N.Y. 1991) (rejecting the argument that the trustee was a "naked trustee" where "the only party that can seek return of the property is [the trustee] . . . and, in fact, [the trustee] would be breaching its fiduciary duties as trustee if it did not seek return of the property").

The fact that Avolon, as the beneficiary of the MSN 1508 Trust, may ultimately benefit from the instant litigation is of no consequence. Courts "regularly exercise diversity jurisdiction in cases where non-diverse individuals or groups who are not direct parties to the litigation nevertheless have a crucial interest in its outcome." *Oscar Gruss*, 337 F.3d at 194 (quoting *E.R. Squibb & Sons, Inc. v. Accident & Cas. Ins. Co.*, 160 F.3d 925, 936 (2d Cir. 1998)) (internal quotation mark omitted).

For these reasons, courts in this district have consistently determined that the trustee owner of an aircraft is a real and substantial party to the controversy. Considering a set of aircraft trust agreements similar to the one at issue in the instant case, Judge Lynch observed:

> The trusts at issue . . . are not novel documents, but familiar financing devices in the airline industry. As such, they have been the subject of prior litigation, and this Court has held in earlier cases that a trustee such as Wells Fargo is a 'real and substantial party to the controversy' who 'sues not only as an agent, but also as an individual who has his own stake in the litigation.' . . . Whatever other powers Wells Fargo may possess or lack, at the core of the Trust Agreements are provisions that empower it to own and convey the property, to receive rent payments, and to exercise the remedies provided in the leases. The powers granted by the Trust Agreements . . . are more than ample to support Wells Fargo's status as a party with an independent stake in the matter.

*TACA Int'l Airlines*, 314 F. Supp. 2d at 200–01 (quoting *Oscar Gruss,* 337 F.3d at 194); *see also Mercantile-Safe Deposit & Tr. Co. v. Trans World Airlines, Inc.*, 771 F. Supp. 90, 92 (S.D.N.Y. 1991) (holding that the aircraft owner trustee was a real party to the controversy, and refusing to look to the citizenship of trust beneficiaries, where "[t]he Agreement specifically affords plaintiff the power to seek return of the property at issue" and "the trustee is entitled to sue in its own name").

Finally, contrary to Defendants' argument, the Supreme Court's recent decision in *Americold Realty Trust v. Conagra Foods, Inc.*, 136 S. Ct. 1012 (2016), does not change the rule announced in *Navarro* or its applicability to this case. *Americold* held that "an unincorporated entity sued in its organizational name," including the real estate investment trust at issue in that case, takes the citizenship of its members. *Id.* at 1017. But *Americold* has no bearing on determining the citizenship if a *trustee*. As the Court explained:

> "*Navarro* had nothing to do with the citizenship of [a] 'trust.'" Rather, *Navarro* reaffirmed a separate rule that when a trustee files a lawsuit in *her* name, her jurisdictional citizenship is the State to which she belongs—as is true of any natural person. This rule coexists with our discussion above that when an artificial entity is sued in *its* name, it takes the citizenship of each of its members.

*Id.* at 1016 (alterations in original) (quoting *Carden v. Arkoma Assocs.*, 494 U.S. 185, 192–93 (1990)) (citations omitted). Because the MSN 1508 Trust is not a party to this case, *Americold* does not guide this Court in determining the plaintiff's citizenship for purposes of diversity jurisdiction. *See id.* ("[W]hen a trustee files a lawsuit or is sued in her own name, her citizenship is all that matters for diversity purposes. For a traditional trust, therefore, there is no need to determine its membership, as would be true if the trust, as an entity, were sued." (citation omitted)); *see also Ullah*, 2014 WL 470883, at *4 (rejecting as irrelevant defendant's argument

that "the citizenship of a trust is determined by the citizenship of its trustees and beneficiaries" because the "action was filed by a trustee, not a trust").

## IV. Conclusion

For the foregoing reasons, Defendants' motion to dismiss for lack of subject matter jurisdiction is DENIED. Defendants shall file answers to the Complaint within 21 days of the date of this Opinion and Order.

The Clerk of Court is directed to close the motion at Docket Number 10.

SO ORDERED.

Dated: August 7, 2017
       New York, New York

                                      J. PAUL OETKEN
                                   United States District Judge